UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| This Document Relates to All Cases | Master Docket Case No. 1:14-cv-01748<br><br>Hon. Judge Matthew F. Kennelly |

**DEFENDANTS' SUPPLEMENTAL BRIEF
IN FURTHER SUPPORT OF THEIR REVISED CASE SCHEDULE**

This supplemental brief provides further information in response to the Court's questions at the November 4 oral argument about the parties' proposed case schedules.

I.      **General Causation**

On October 30, AbbVie proposed a case schedule that begins by allowing Plaintiffs to take **all** of their discovery on **all** topics, followed by general causation proceedings (expert reports, depositions, and *Daubert* motions). At the November 4 oral argument, Plaintiffs gave just one reason for opposing that schedule including general causation proceedings: it would require them to take discovery of all Defendants at the same time, which they claimed would be more than they could accomplish.

That claim directly contradicts the schedule that Plaintiffs themselves originally proposed on October 20. Their original proposal was that "generic liability discovery of the defendants"— **all** Defendants—would take place at the outset of the case schedule. (Plaintiffs' October 20 Brief, Dkt. 428 at 1.) That is exactly what AbbVie now proposes. If taking discovery from all Defendants at the same time was an option under Plaintiffs' original schedule, it ought to be an option under AbbVie's revised schedule.

What's more, when seeking their leadership positions, Plaintiffs' counsel argued to the Court that an oversize Plaintiffs Steering Committee was justified precisely because of the need to take discovery from all Defendants and divide responsibility for getting it done. "We recommend a PSC that is larger than typical for mass tort litigation," because "this is an atypical MDL in that the litigation will require the prosecution of claims against six different defendants." (Dkt. 150 at 4.) The necessary discovery would include "common issues of fact such as ***general causation***" as well as "unique evidence" for proving each Defendant's liability. (*Id*. (emphasis added).)

The plan that Plaintiffs announced was to use the efforts of "six teams within the PSC, each of which will be tasked with prosecuting the claim against a particular Defendant." (*Id*.) "Each committee will be chaired by one or more members of the executive committee and comprised of approximately 12-20 individual lawyers which will include PSC members,

associates at their firms, and other interested counsel in this litigation." (*Id.* at 9.) Corresponding to the main Defendants, the committees were to include "d. ABBVIE COMMITTEE; e. ELI LILLY COMMITTEE; f. ACTAVIS COMMITTEE; g. PFIZER COMMITTEE; h. ENDO COMMITTEE; [and] i. AUXILIUM COMMITTEE." (*Id*. at 10.)

    Plaintiffs have more than enough lawyers to take discovery from more than one Defendant at the same time. The Plaintiffs' Steering Committee, including Co-Leads, Executive Committee, and regular membership, totals ***32 lawyers from 32 different law firms,*** each of whom told the Court that they have sufficient staffing and resources to litigate the claims in this MDL. By combining the efforts of those firms with the efforts of some of the dozens of other firms that have filed cases in the MDL, Plaintiffs planned to staff each committee, for each Defendant, with 12-20 lawyers. That is plenty of lawyers to review documents and take depositions. It is a much larger team of attorneys than AbbVie, for example, is using to litigate this case.

    In sum, Plaintiffs have enough lawyers to take discovery from all Defendants at the same time, they have made plans for how they intend to take discovery from all Defendants at the same time, and they proposed to the Court a schedule that would require them to take discovery from all Defendants at the same time. They should not now be heard to argue that taking discovery from all Defendants at the same time would be difficult or treat Plaintiffs unfairly, especially given—as their own original proposed schedule recognized—that Plaintiffs will be seeking a great deal of the same discovery, such as discovery on general causation, from all Defendants in any event.

    Plaintiffs were also unable to explain, at the November 4 oral argument, when they would be able to take discovery of all Defendants. If they intend to take discovery from just one Defendant at a time—for example beginning discovery of the second Defendant when discovery of AbbVie ends in late 2015—it would extend the overall MDL case schedule by many years. It is odd, to say the least, for Plaintiffs who have pushed so hard for an extraordinarily quick first trial date (in September 2016, compared to AbbVie's revised proposal of December 2016), to

announce new plans for discovery of Defendants that evidently contemplate that this MDL will be operating long into the future. Under AbbVie's plan, by contrast, all discovery of all Defendants will take place at the same time, prior to general causation proceedings. Then, if these cases survive the general causation challenge and continue, only the bellwether portion of the case would begin with AbbVie, with the other Defendants trailing not far behind.

For the reasons explained above and in AbbVie's October 20 and 30 briefs, Defendants respectfully urge the Court to adopt AbbVie's proposal for general causation proceedings to follow all fact discovery of all Defendants.

## II. Fact Discovery Cut-Off

Plaintiffs acknowledge that under their proposed schedule, fact discovery of Defendants would never end, even after trials begin. At the oral argument, Plaintiffs argued that because TRTs are still on the market, relevant future events or scientific findings may occur, which justifies discovery without limits. For two reasons, Plaintiffs' argument has no merit.

First, Plaintiffs may not pursue their claims in this litigation indefinitely, hoping that one day the evidence or science may change to help them prove their claims. As the Supreme Court put it, "there are important differences between the quest for truth in the courtroom and the quest for truth in the laboratory. ***Scientific conclusions are subject to perpetual revision. Law, on the other hand, must resolve disputes finally and quickly***." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596-97 (1993) (emphasis added); *see also Rosen v. Ciba-Geigy*, 78 F.3d 316, 319 (7th Cir. 1996) ("Law lags science; it does not lead it."). Having chosen to file these lawsuits, "plaintiffs [must] carry the burden of proving ***today*** based on ***currently available scientifically valid evidence*** that [the drug] can cause [the alleged injuries]." *In re Bextra and Celebrex*, 524 F. Supp. 2d 1166, 1181 (N.D. Cal. 2007) (emphasis added). In fact, Plaintiffs have not only sued, they have pressed for an extraordinarily quick resolution of their claims. They cannot rely on unknown hoped-for future events to keep discovery open forever.

Second, as the Court stated during the November 4 oral argument, it would be all but unheard-of for a case to have no fact discovery deadline. MDL courts establish a fact discovery

deadline as a matter of course, ***including in cases when a drug is still on the market***. *See, e.g., Incretin* (MDL 2542, Ex. 1 at 1 ); *Viagra* (MDL 1724, Ex. 2 at 3); *Accutane* (MDL 1626, Ex. 3 at 3); *Vioxx* (MDL 1657, Ex. 4 at 4). As the Court also stated, leaving discovery open would result in unending revisions to expert reports and re-depositions of experts, not to mention after-the-fact challenges to *Daubert* rulings and summary judgment rulings. Unending discovery may also eliminate the benefit that bellwether trials are supposed to produce: giving the parties reliable test cases, the results of which may be extrapolated to the population of all cases. If the discovery and evidence continues to change, the bellwethers may not serve their purpose.

### III. Bellwether Selection

At the October 24 status hearing, the Court observed that Plaintiffs' original proposed schedule called for bellwethers to be picked too early, which decreases the likelihood of selecting truly representative cases. In response to the Court's comments, Plaintiffs only moved back their proposed bellwether selection date by 3 months (from April to July 2015). AbbVie's revised proposal has bellwether selection an additional 5 months later (December 2015), and the small amount of extra time is very valuable. It will allow many more cases to be on file and many more medical records to be collected. Defendants feel strongly that having more time to pick the bellwethers is essential to the fairness of the process and to picking bellwethers that will serve for both sides as true representative test cases.

**IV. Conclusion**

For all of these reasons and those stated in their October 20 and 30 briefs, Defendants respectfully urges the Court to adopt AbbVie's revised schedule.

Dated: November 5, 2014                                    Respectfully submitted,

                                                     WINSTON & STRAWN LLP

                                    By: */s/ Scott P. Glauberman*
                                          James F. Hurst
                                          Scott P. Glauberman
                                          Bryna J. Dahlin
                                          Nicole E. Wrigley
                                          **WINSTON & STRAWN LLP**
                                          35 West Wacker Drive
                                          Chicago, Illinois 60601
                                          Tel: (312) 558-5600
                                          Fax: (312) 558-5700
                                          sglauberman@winston.com
                                          jhurst@winston.com
                                          bdahlin@winston.com
                                          nwrigley@winston.com

                                          *Attorneys for AbbVie Inc. and Abbott Laboratories*


                                          */s/ Andrew K. Solow*
                                          Andrew K. Solow (*pro hac vice*)
                                          **KAYE SCHOLER LLP**
                                          250 West 55th Street
                                          New York, New York 10019
                                          Telephone: (212) 836-7740
                                          Facsimile: (212) 836-6776
                                          andrew.solow@kayescholer.com

                                          Glenn J. Pogust (*pro hac vice*)
                                          **KAYE SCHOLER LLP**
                                          250 West 55th Street
                                          New York, New York 10019
                                          Telephone: (212) 836-7740

Facsimile: (212) 836-6776
glenn.pogust@kayescholer.com

Pamela J. Yates (*pro hac vice*)
**KAYE SCHOLER LLP**
1999 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 229-1878
pamela.yates@kayescholer.com

*Attorneys for Endo Pharmaceuticals Inc.*


*/s/ David E. Stanley*
David E. Stanley (*pro hac vice*)
Janet H. Kwuon (*pro hac vice*)
**REED SMITH LLP**
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
dstanley@reedsmith.com
jkwuon@reedsmith.com

*Attorneys for Eli Lilly and Company and Lilly USA LLC*


*/s/ Thomas J. Sullivan*
James D. Pagliaro (*pro hac vice*)
Thomas J. Sullivan (*pro hac vice*)
Ezra D. Church (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel:    (215) 963-5000
Fax:    (215) 963-5001
jpagliaro@morganlewis.com
tsullivan@morganlewis.com
echurch@morganlewis.com

Tinos Diamantatos
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Dr., Ste. 500
Chicago, IL 60601
Tel:    (312) 324-1780

Fax: (312) 324-1001
tdiamantatos@morganlewis.com

*Attorneys for Defendant*
*Auxilium Pharmaceuticals, Inc.*


*/s/ Joseph P. Thomas*
Joseph P. Thomas (*pro hac vice*)
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 698-5000
Fax: (513) 698-5001
jthomas@ulmer.com

*Attorney for Defendants Actavis, Inc.;*
*Actavis Pharma, Inc.; Watson Laboratories,*
*Inc.; and Anda, Inc.*

## **CERTIFICATE OF SERVICE**

I, Scott Ahmad, hereby certify that on November 5, 2014, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Scott Ahmad*
